Good morning, Your Honours. May it please the Court, Jeremy Harwood for the appellant, Sizzlon Energy Ltd. I have reserved four minutes for rebuttal. Thank you. Your Honours, Justice Jackson recognised in the Eisendricker case, when discussing the inherent distinction between foreign citizens and aliens, recognised throughout the civilised world, that citizenship as a head of jurisdiction and a ground of protection was old when Paul invoked it in his appeal to Caesar. He's not before us today, is he? Well, Paul invoked that Roman citizenship and Mr. Sridhar is invoking his US citizenship. Do you want me to say, thou almost can persuade me to be a Christian or something like that? Well, I don't think Semestris was a Christian and he heard that appeal first. And Mr. Justice Jackson continued, the years have not destroyed nor diminished the importance of citizenship, nor have they sat the vitality of a citizen's claims. The reason I start with that, Your Honour, is that this case involves a very important issue of first impression, at least at the circuit level, of the right of a foreign citizen, a resident abroad, who has not come within the territory of the United States. Can we, before we get to the, I appreciate your argument because it's a very interesting case, but we, as you know, have certain rules of construction that we have to follow. One of them is that if the statute is plain on its face, we never get to legislative history. We never get to Paul, for that matter. Why is this statute in any way ambiguous on its face? Your Honour, I was going to address that point because clearly it's the biggest hurdle we face, and we did brief it, but the basic issue is that if you look at the legislative history, it does say that that person... But you're, of course, getting the cart before the horse. You're going to legislative history without telling us why the statute's ambiguous. Well, it's not ambiguous in the sense that any person, the user is defined as any person, but neither was any person ambiguous in the Fifth Amendment, and neither is the people ambiguous, which when the court addressed the Fourth Amendment and the majority of this court, in the Verdugo-Oquidez case, said the people is not cabined by any citizenship requirement, and we declined to read it that way. Chief Justice, Circuit Judge Wallace declined to read it that way because he looked back at the legislative history and Madison's intentions and said, No, that is not right. And Chief Justice Rehnquist made clear that persons referred to in the Fourth Amendment refers to United States citizens and not foreign citizens. If that case wasn't there, we wouldn't be here. Because of Verdugo, we are here, and indeed, bankruptcy judge Dropper, in the case that Microsoft forwarded to the court in Ray Toft, actually referred to this question of doubt whether the debtor, in that case, a foreign trustee seeking ECPA relief. Does everything hang on Verdugo, or do you have other authorities that you feel are equally or more persuasive on that issue? I think, although Verdugo has been questioned, it hasn't been overruled, Your Honor. I just want to know your authority. Of course, there are a lot of authorities on the other side. I just want to know, is Verdugo your best case? It is, Your Honor. In terms of the Fourth Amendment, it is. Obviously, there's the Eisenhower case, which is analogous in respect to the Fifth Amendment. But it is our best case. And then if there is that possibility, and we briefed this in terms of the Edelman-Tattinger case, which dealt with the 1782 issue of whether or not discoverability had to be based on whether or not materials were discoverable overseas in order to be discoverable here. The court said in the Tattinger case, we look not only to the particular statutory language, but to the design of the statute as a whole and its object and policy, citing Crandon in the Supreme Court case. And then in the older Hevering New York Trust case from the Supreme Court in 1934, the court quoted people in Utica Insurance that a thing that is within the intention of the makers of a statute is as much within the statute as if it were in the letter. And the thing which is within the letter of the statute is not within the statute, unless it is within the intention of the makers. Now, I recognize that, as we must, that the Connock decision and the Theothold decisions from these courts laid down clear rules of statutory interpretation in respect of this very statute. But he didn't do so in the context of a Fourth Amendment background. And that's when you say, well, is there a Fourth Amendment background? And the Senate report says, quote, in discussing the Privacy Act of 86, says any discussion of application of current law governing interception of e-mail or use of e-mail surveillance begins with the Fourth Amendment, which protects our reasonable expectation of privacy. And then the Senate report, under the heading Nature of the Problem, stated, most important, if Congress does not act to protect the privacy of our citizens, we may see the gradual erosion of a precious right. Privacy cannot be left to depend solely on physical protection, continued. Additional legal protection is necessary to ensure the continued vitality of the Fourth Amendment. And that additional legal protection was the ECPA. And the fact that Congress said user is defined as any persons does not mean that they meant any persons, including an Indian citizen in a jail in India invoking Fourth Amendment backgrounds to this statute. And we proceed from that to the Virgilio Urquidez. Let's assume, arguendo, that you're correct, that we can get into the legislative history. What in the legislative history do you believe clearly demonstrates that Congress did not intend to have the Indian citizen in this case covered by this Act? Your Honor, I believe it's at the preamble to the Senate report where it says begins, that was any discussion, begins, the origin of the Act begins with the Fourth Amendment. Then that Congress must act to protect our legal protection is necessary to ensure the continued vitality of the Fourth Amendment. But the statute itself doesn't expressly incorporate constitutional provisions, does it? It does not, Your Honor. So you're basically piggybacking into the statute based upon the preamble of legislative history, the whole gamut of discussion in the Supreme Court and elsewhere about the meaning of the Fourth and Fifth Amendment. Your Honor, I wouldn't say piggybacking because, and it's not just the preamble to the Senate report either. Microsoft says that we had put in random samplings from legislative history. The nature of the problem is what I've just read from under the heading, and there is a reference to U.S. citizens or our people or we the people protections. What about the concept, admittedly in a different context, but in the Religious Freedom Restoration Act that's been cited for the concept that when Congress wants to define person in a particular way, it knows how to do it. What's your response to that? Yes, and Microsoft did make those arguments that Congress does know what it wants to do when it wants to do it. It's assuming that it reads the bill. Sorry, Your Honor. It's assuming the members of Congress read the bill, but just assume for a month they do. But perhaps in this case, and remember this is 25 years ago when email was in its infancy, the idea that people would be communicating around the world by email probably wasn't in the forefront of Congress's mind. And, in fact, in cases as we discussed in our reply brief, when that hasn't been clear, the people have gone back and said, do you actually mean to apply this worldwide? And had Congress known that Mr. Sridhar, who is based in India, is going to be storing his emails in the United States and fail to comply with Australian court proceedings and subpoenas requiring turnover, and that he's then going to come in and claim his reasonable privacy expectations, they would say, no, no, we didn't intend that. Because the ramifications for that are that under 1782, anybody anywhere in the world can say, I'm storing my communications, and after all, everybody now communicates with email. I think the post office is closing 3,000 post offices this year in the U.S. that they can say, we don't have it, Microsoft's got it in Redmond. Or in China. Or in China. Do you think that Sridhar was purposely storing his emails as, for example, a backup? It's hard to say. I don't know is my answer to that, but I think probably not. I think whatever emails he had, we haven't been able to get hold of. Well, that's a question I have. You know, you're not without a remedy. Why don't you just ask Sridhar for the emails and pursue whatever discovery is available in the jurisdiction where this matter is originating? You're correct, Your Honor. We have done that. We've done that in Australia. The judicial assistance that we've requested in the lower court was pursuant to a direction from the Australian court, and Mr. Sridhar has not complied with those subpoenas. And, frankly, there's nothing we can do to compel him to do so. So that's the answer. The best thing that can happen in a trial is for the other side not to produce documents. I think sometimes litigators forget that. Well, Your Honor, the answer to that is not only would that be the case here if there was personal jurisdiction, if there had been adverse inferences or sanctions, but what we're trying to get is basically trace the money because that's what really this inquiry is after, is to establish Mr. Sridhar's guilt. What's the present status? The district court issued its order in August 2010. What's going on in Australia? The Australian proceeding case is proceeding. The certain banks, Swiss banks, have been joined as defendants, and in India Mr. Sridhar is awaiting posting bail. But it's a multi-jurisdictional, massive global fraud, and its emails were not subject to discovery simply by the expedient of parking them in the United States and then claiming ECPA. Every felon in the world would do so. And 1782, which was enacted after 150 years of congressional mandate to assist foreign tribunals, would be gutted, and that really isn't the intention of the ECPA. Finally, in terms of updating, you know, you just received the Tufts case, July 22, 2011. Do you want to say anything further about that? You actually applied it to your benefit. Is there anything else you want to say about that? Yes, I was going to save my time and rebuttal to it, but I'd say that Judge Gropper recognized that the Fourth Amendment specifically, there was some question as to whether or not the Fourth Amendment applied. He said it is unclear whether a debtor, a foreign national not located in the United States, would be entitled to claim the protections of the Fourth Amendment. And he cited the Verga-Udikes case. But he then, nevertheless, continues to actually say the Fourth Amendment does apply, and he cited a magistrate judge's decision from the Eastern District of Virginia, in the Inouye 2703 order case, which doesn't actually stand for that proposition whatsoever. In fact, the Icelandic member of parliament asked for protection based on comity for her e-mails, and the magistrate judge declined to give any protection based on comity. So I think, if anything, that Toff case supports our analysis that, in fact, one district court, or at least federal court, has addressed this issue of foreign citizenship and has actually recognized the problem. Thank you. Do you want to save the rest of your time for rebuttal? Thank you, Your Honor. Very good. We'll next hear from, I don't know who's going first. Are you splitting your time? What are you doing? Good morning. May it please the Court. I'm Blake Marks-Dias on behalf of Respondent Microsoft. I'm sharing my time with counsel for Mr. Sridhar. Okay. And how are you dividing that up? I would like to take nine minutes. Okay. And I will allow counsel to have six minutes. Very good. Okay. Please proceed. Thank you. We ask the Court to affirm the district court's order. By definition, Section 2702 of the Electronic Communications Privacy Act, or the ECPA, applies to any person. And Mr. Sridhar qualifies as any person for three reasons. First, the statute's language is plain and unambiguous. Second, when Congress says any person in a statute, it means any person. And third, recent authority holds that the ECPA applies to foreigners, irrespective of their foreign nationality. On the first point, the statute's language, the ECPA says that an email service provider such as Microsoft can't produce email content without the user's consent. And Mr. Sridhar, under any ordinary definition of user, was a user of the hotmail service. But here we have even more guidance than that, because user is itself an expressly defined term in the statute to mean any person. And the definition has no limitation as to nationality. Mr. I mean, the district court ignored the issue of an implied consent here. What's your position with regard to that? Is that something we just don't get to because it's so ludicrous, or do you send it back to the district court to consider that issue? Because obviously, if he's consented, then there's no issue. That would be correct, Your Honor, but Microsoft takes no position on that, which is part of the reason I'm sharing my time with Mr. Sridhar's counsel. Okay. We'll talk to her about that then. As I said, the definition of any person has no limitation on nationality. It's black-letter law that the court doesn't reach legislative history where statute's plain and unambiguous. And I submit that uncertainty and burden on the court system would result if we had to resort to legislative history every time we're looking at phrases in statutes as mundane as any person. What's your position on opposing counsel's argument that if you're right, that every felon in the world is going to use Microsoft or some other U.S.-based email so that it can't be discovered? I have several responses. Okay. First, the policy argument can't trump the plain meaning of what Congress wrote in the statute. In other words, if there's a problem, it's Congress's obligation to fix it, not the court. That would be my first response. And, of course, Congress would be free to amend the statute if that ended up happening, which hasn't happened since 1986. But you yourself make a policy argument to support your conclusion, the policy argument of the burden that Microsoft would face if it had to look through all of these requests. Microsoft does make a policy argument, and perhaps that's a bit of a belt-and-suspenders approach on our part because we think you can reach the merits based solely on the language of the statute. Actually, there is something to be said that policy arguments are okay if you're backing up the plain meaning, but suspect if you're using them to get away from the plain meaning. Well put. Thank you. I would also submit that Suzlon's concerns are exaggerated here. If the email content concerned a serious criminal enterprise, the ECPA has law enforcement exceptions which apply, so you could get the email content and people couldn't use the United States as a safe harbor. So basically if it were the police from Australia asking for this, there'd be no problem. Correct. Okay, so it's just on a civil litigation basis. That's correct. And even in the civil context, in the foreign proceedings, they could get an order to compel from the account holder, just like is done all the time in U.S. courts involving U.S. litigants with these same issues. And then there's the sanctions that Suzlon's counsel spoke about. Or even an order of contempt, and Mr. Sridhar could be presumably put back in jail until he complies with the court's order. And I think it's worth noting also that Suzlon doesn't even attempt an argument which applies to the language of the statute, and that's because the term any user or any person, excuse me, doesn't lend itself to any alternative means. My second argument, though, is that Congress, when it says any person, it means any person. Or as the court in O'Rourke said, Congress distinguishes between a citizen and any person when it wishes to do so. And O'Rourke is an excellent example of a case where a court is interpreting a statute that has a broad definition of person. There, an Irish citizen was allowed to access documents under the Freedom of Information Act. And the court noted that on its face, the FOIA's definition of person was broad and had no limitation on citizenship. The court contrasted this language with language in other statutes, like the Privacy Act, 5 U.S.C. section 552, which says that it applies only to citizens and to lawful aliens. What do you think about the basic argument of tapping into the Fourth Amendment and then using that to limit what any person means? Suzlon has relied on cases interpreting the Fourth Amendment and the Fifth Amendment, which are cases interpreting the meaning and application of the Constitution. Here, we're dealing with the meaning and application of a statute. That was designed to reinforce a constitutional right to privacy. Perhaps, but the plain language says any person. And in O'Rourke, when we're dealing with the statute, not the Bill of Rights, and looking at what person means, they say when Congress wants to limit it to citizens, it does so. And we've cited for the court many other examples of statutes that are expressly limited to citizens, such as the Age Discrimination and Employment Act, and others cited in our brief. So if, as Suzlon suggests, the ECPA was meant to apply only to citizens or lawful aliens, then Congress knew how to do that, and it didn't do that here. What difference, if any, does it make that it does not contain any reference, express reference to the Fourth or the Fifth Amendment? I think that picks up on a question that you asked of Suzlon's counsel. There's some information perhaps in the preamble and scattered parts of the record here and there, but it doesn't expressly incorporate the Constitution. The Act is what it is. And actually, this brings me to my third point, which is another reason that the district court's decision can be affirmed as the recent authority that we cited in the Toft case. And that was the case out of the Southern District of New York recently. There, two foreign courts had issued orders to intercept debtors' emails, which were stored in the United States. And the debtor was a citizen of Germany. He owed some 23 million euros, I think, to creditors. The court said that the U.S. public policy trumped these foreign court orders because, in large part, because the ECPA's protections apply to Toft's emails, irrespective of the foreign nationality of the account holder. And the court, in making this holding, said that the ECPA applies to a foreigner, even though the Fourth Amendment may not. And we think that's an important point, because Suzlon's argument is based largely on the premise that the Fourth Amendment doesn't apply to foreigners. But, as Toft illustrates, this court can and should hold that the ECPA's protections apply to a foreigner, even if the Fourth Amendment may not, and the court need not reach that issue. So, even though Toft, obviously, does not bind us, it's a district court decision from another circuit, you think the reasoning is compelling? That's correct, Your Honor. We think it's persuasive authority because it deals with the exact same issue. The reasoning is sound, and there's no countervailing authority. So, we would ask the court to affirm the district court's order quashing Suzlon's request. Okay. Thank you. Good morning. Svetlana Spivak on behalf of Raja Kaplan Sridhar. Mr. Sridhar supports and agrees with Microsoft's argument and will not waste this court's time repeating it. Mr. Sridhar urges this court to uphold the Honorable Judge Peckman's ruling that the plain language of the Act prohibits disclosure of the information requested by Suzlon Energy. Rather, Mr. Sridhar would like to address a different issue raised by Suzlon Energy, and that is that Mr. Sridhar consented to production of the documents. Mr. Sridhar did not implicitly or explicitly consent to such production. There is no question that there is no explicit consent here. Otherwise, we wouldn't be here at this time. Let me ask you this, counsel. Even if I agreed with you, and I don't know whether I do or not on this matter, but the district court just didn't deal with this, didn't talk about it at all. Why shouldn't we send this portion of the issue back to the district court to consider in the first instance? Because in the event the district court were to find that your client had impliedly consented, the whole issue would go away. We wouldn't even have to address this construction issue under ACPA. Why shouldn't we do that? Your Honor, the issue of the implied or explicit consent was fully briefed in front of the district court. The district court was aware of the arguments, and the district court held that the act applies to Mr. Sridhar's email and prohibits such disclosure. In turn, it held that the exceptions that are included in the act do not apply here. One of the exceptions includes lawful consent. Therefore, the court must have considered the issue of whether Mr. Sridhar granted or didn't grant his consent in this proceeding. Do you think the district court impliedly found that your client didn't impliedly give consent? Yes, Your Honor. Okay. I do. The district court must have considered that issue in order to rule that the act applies to Mr. Sridhar's emails, because that is one of the exceptions. Mr. Sridhar was incarcerated in India, and as soon as he learned about Suzlon Energy's attempts to invade his private emails, he's been objecting all along. At first, his wife made objections at the lower court while he was looking for an attorney to enter appearance. Then we, of course, intervened in the proceedings and been objecting all along. No consent can be implied from the fact that Mr. Sridhar is a party to the Australian proceedings. To allege that a person by simply getting sued consents to production of whatever private A person by simply what? Getting sued. Getting sued. Yes. Okay. He is a defendant. Had he been a plaintiff, it might be different. Sorry? Had he been a plaintiff, it might be different. Well, as we know, there are certain rules, even in Washington State, that if you are a plaintiff, you automatically consent to production of certain documents if you bring a lawsuit. That's why I wanted to In this case Getting sued. Yes. In this case, to say that a person by getting sued automatically consents to production of whatever private information opposing sides deems to be relevant is simply absurd. This argument has been addressed by the court in Flagg case, and in Flagg, the court determined that compelling a non-party provider to produce communications would divulge content of such communication in violation of the act unless such was done with the lawful consent of the originator or the user of the account. And the Flagg case then proceeded to determine how such lawful consent can be obtained. It concluded that it can be done pursuant to the Civil Rule 34. In other words, a person submits a request for production. If opposing side refuses to produce, they can either compel such production or compel consent to such production. Unfortunately, or fortunately, CR 34 does not apply to proceedings here as the underlying proceedings are in Australia. And while opposing side provided a declaration from the Australian Council indicating that what could be or would be done according to subpoenas in Australia, there is nothing in that declaration. Nobody has any knowledge about how Australian court can proceed with respect to compelling Mr. Sridhar's consent. What we do know is we have no evidence that to date Mr. Sridhar was asked to produce those documents, was compelled in any way to produce so. Does it make any difference in this case what the Australian law might be on this point? Well, it does because obviously we need to know, we need to have Mr. Sridhar's consent. And what we know is... So you say it is of importance only with respect to the issue of consent? Yes. But otherwise not? Otherwise I do not believe so. That doesn't bear on the statutory construction issue in any way? No, no, no. So at this point that issue is not even relevant because there is no evidence that Mr. Sridhar has consented or been compelled to consent. There are situations in which consent can be implied if a person has no reasonable expectation of privacy in the requested information. However, there is no evidence here that Mr. Sridhar had any notice that he would have diminished expectation of privacy in his private emails on Microsoft account. If anything, his contract with Microsoft indicated that U.S. law would apply. U.S. law, of course, includes the act at issue here. And furthermore, the contract indicates that the documents may be disclosed in accordance with U.S. lawful procedure, which, as we just discussed, includes CR 34 or lawful consent by Mr. Sridhar, which does not exist in this case. Do we have anything in the record indicating that these are the kinds of documents that would be covered by a right to privacy in a normal discovery dispute? In a normal discovery dispute, privacy is limited to things like financial information or medical information or personal information. And normally in a litigation, you know, everything else gets turned over, or most everything else. Is there any indication here that there is something particularly sensitive about these documents? No, Jona. That was not addressed below, or there is no evidence as to the content of that email, and that's exactly what we're trying to protect. There is no indication that those emails are relevant to the proceedings whatsoever as well. To conclude, the trial court properly determined that it could not compel Microsoft to disclose the contents of Mr. Sridhar's Hotmail account without his lawful consent, and that such disclosure would violate the act. And we ask that this court uphold the lower court's decision. Thank you. Thank you. I'll hear a rebuttal. Thank you, Your Honors. Very briefly, Judge Guilford, the issue below of the contents was raised by Mr. Sridhar's counsel. They asked to have the opportunity to review the content before they are handed over to us. We objected and said at least the court should do that. That argument is at 18 of the appendix, or joint appendix. Your Honor, going to the issue of, first of all, Microsoft's arguments about policy and the Scylla and Charybdis argument that they raised, Section 2707D1 provides an absolute defense to Microsoft's compliance with any court warrant or order, in good faith. Second, the O'Rourke case, which they cited, the court there said there was insufficient evidence that citizens were intended by Congress to be the sole beneficiaries of the Freedom of Information Act. The Toft case, which is referred to as compelling authority, is not a compelling, let alone authority. It was decided by the bankruptcy judge on July 22nd of this year. It is subject to a 14-day appeal period, which has not expired. And it, in fact, incorrectly relied on an Eastern District Virginia magistrate judge's opinion, which is hardly compelling, let alone authority, and doesn't stand for the proposition for which it was cited. You argue in your reply brief that Microsoft had waived the policy argument. Can you waive a policy argument? Well, the court heard it, so I won't press the point. But I think it was basically a reaction to, oh, gosh, if this really happens, the burden is going to be on us. And, of course, they can correct that by amending their Hotmail account subscriber's requirements and, in addition, putting a fee on it in the event that they have any burdens under it. I think it was a latter-day economic as opposed to policy consideration. Your Honor, going back to the Verdugo case, the majority specifically said that they would not expand the reading or would not cabin the reading of any person in that case, and that's exactly what Circuit Judge Wallace declined to follow, and that's exactly what the Supreme Court upheld. And we think that's where we hang our hat, because the ECPA cannot be considered other than a Fourth Amendment statutory protection of the privacy rights of the citizens. Thank you, Your Honor. Thank you, Mr. Arwell. I hope perhaps you'll have an opportunity to argue this before the Supreme Court. It would present the interesting paradox of where Justice Scalia would have to decide, since Paul is involved, whether originalism takes precedence over legislative history, which he despises. It will be interesting. I think if the Judge Gropper's decision is considered authoritative, then perhaps there is a conflict. You never know. Thank you, Your Honor. Thank you both, all of you, for this interesting argument. It's a really interesting case and an important case. We thank you for your preparation and for your argument. The case of Souslon Energy v. Microsoft et al. is submitted.
judges: Guilford, Noonan, Smith M.